IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LIONEL LIMA, JR., et al., individually and on behalf of all others similarly situated, | ) ) ) ) | Civ. No. 12-00509 SOM-WRP |
| | ) | ORDER CERTIFYING A QUESTION |
| Plaintiffs, | ) ) | TO THE HAWAI'I SUPREME COURT |
| vs. | ) ) ) | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) ) | |
| EVELYN JANE GIBO, et al., individually and on behalf of all others similarly situated, | ) ) ) ) ) | Civ. No. 12-00514 SOM-WRP |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) ) | |
| DAVID EMORY BALD, et al., individually and on behalf of all others similarly situated, | ) ) ) ) ) | Civ. No. 13-00135 SOM-RT |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| WELLS FARGO BANK, N.A., | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

**ORDER CERTIFYING A QUESTION TO THE HAWAI'I SUPREME COURT**

I.          **CERTIFIED QUESTION.**

Pursuant to section 602-5(a)(2) of Hawai'i Revised Statutes and Rule 13 of Hawai'i Rules of Appellate Procedure, this court respectfully certifies the following question to the Hawai'i Supreme Court:

> When (a) a borrower has indisputably defaulted on a mortgage for real property, (b) a lender has conducted a nonjudicial foreclosure sale but has not strictly complied with the requirements governing such sales, and (c) the borrower sues the lender over that noncompliance after the foreclosure sale and, if the property was purchased at foreclosure by the lender, after any subsequent sale to a third-party purchaser, may the borrower establish the requisite harm for liability purposes under the law of wrongful foreclosure and/or section 480-2 of Hawai'i Revised Statutes by demonstrating the loss of title, possession, and/or investments in the property without regard to the effect of the mortgage on those items?

The gist of the above question may be restated (assuming but not including the underlying factual predicates) as a question about which party has the burden of proof:

> Is the effect of the mortgage considered only as a matter of setoff that a lender has the burden of proving after the borrower establishes the amount of the borrower's damages, or does a borrower with no preforeclosure rights in property except as encumbered by a mortgage bear the burden of accounting for the effect of the mortgage in establishing the element of harm in the liability case?

This question of substantive Hawaiʻi law is "determinative of the cause" in three putative class actions before this court and is not answered by "clear controlling precedent in the Hawaiʻi judicial decisions." Haw. R. App. P. 13(a).

The three cases are *Lionel Lima, et al. v. Deutsche Bank National Trust Company*, Civ. No. 12-00509 SOM-WRP ("*Lima*"); *Evelyn Jane Gibo, et al. v. U.S. Bank National Association*, Civ. No. 12-00514 SOM-WRP ("*Gibo*"); and *David Emory Bald, et al. v. Wells Fargo Bank, N.A.*, Civ. No. 13-00135 SOM-RT ("*Bald*").

A negative answer to the certified question will dispose of all claims in each case. This court therefore respectfully asks the Hawaiʻi Supreme Court to exercise its discretion to accept and decide the certified question.

**II.       STANDARD FOR CERTIFYING A QUESTION.**

The Hawaiʻi Supreme Court has jurisdiction and power "[t]o answer, in its discretion, any question of law reserved by a circuit court, the land court, or the tax appeal court, or any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]" Haw. Rev. Stat. § 602-5(a)(2).

"When a federal district court or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of

3

Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion."  Haw. R. App. P. 13(a).

The court certifying a question must provide "a statement of prior proceedings in the case, a statement of facts showing the nature of the cause, the question of law to be answered, and the circumstances out of which the question arises."  Haw. R. App. P. 13(b).

**III.      STATEMENT OF PRIOR PROCEEDINGS AND OF FACTS.**

These three putative class actions[1] have proceeded in a parallel manner.  Filed in 2012 in state court and removed to federal court, these cases have lengthy histories, which the court summarizes here only as relevant to the certified question.

*Lima* arises from alleged conduct relating to the nonjudicial foreclosure of properties owned by Plaintiffs Lionel Lima, Jr., Barbara-Ann Delizo-Lima, Calvin Jon Kirby II, Leneen Kron, Deirdre-Dawn K. Cabison, James C. Clay, Scott A. Coryea, Katheryn Coryea, Richard H. Farnham, Nancy L. Farnham, Timothy Ryan, Donna Ryan, Kaniala Salis, and Brian S. Weatherly (all fourteen plaintiffs referred to collectively as "the Lima Plaintiffs").  The Lima Plaintiffs are suing Defendant Deutsche

---

[1] No class has been certified to date.

Bank National Trust Company ("Deutsche Bank").  *See Lima*, ECF No. 238 (Second Amended Complaint).[2]

*Gibo* arises from alleged conduct relating to the nonjudicial foreclosure of property owned by Plaintiffs Evelyn Jane Gibo, Patrick Stephen Hemmens, Deanne Davidson Hemmens, Vincent Labasan, and Jennifer Strike (all five plaintiffs referred to collectively as "the Gibo Plaintiffs").  The Gibo Plaintiffs are suing Defendant U.S. Bank National Association ("U.S. Bank").  *See Gibo*, ECF No. 196 (Second Amended Complaint).[3]

Finally, *Bald* arises from alleged conduct relating to the nonjudicial foreclosure of property owned by Plaintiffs David Emory Bald, Emily Lelis, James L.K. Dahlberg, Michael John Myers, Jr., Tham Nguyen Myers, David Levy, and Thomas T. Au (all seven plaintiffs referred to collectively as "the Bald Plaintiffs").  The Bald Plaintiffs are suing Defendant Wells

---

[2] The Second Amended Complaint, filed on June 20, 2018, is the operative complaint in *Lima*.  The Lima Plaintiffs filed their original Complaint in state court on June 4, 2012, and a First Amended Complaint on September 6, 2012.  *Lima*, ECF Nos. 1-1, 1-2.

[3] The Second Amended Complaint, filed on June 20, 2018, is the operative complaint in *Gibo*.  The Gibo Plaintiffs filed their original Complaint in state court on June 18, 2012, and a First Amended Complaint on September 6, 2012.  *Gibo*, ECF Nos. 1-1, 1-2.

Fargo Bank, N.A. ("Wells Fargo").  *See Bald*, ECF No. 99 (First Amended Complaint).[4]

This order refers to the Lima Plaintiffs, Gibo Plaintiffs, and Bald Plaintiffs collectively as "Plaintiff Borrowers" and to Deutsche Bank, U.S. Bank, and Wells Fargo collectively as "Defendant Banks."[5]

When removed, the cases included claims not only against Defendant Banks, but also against David Rosen, Defendant Banks' attorney in the foreclosure proceedings.  Plaintiff Borrowers alleged that Defendant Banks and Rosen had breached their duties in selling the properties when they advertised the foreclosure sales as sales by quitclaim deed and postponed the sales without publishing notices of new dates and times.

Plaintiff Borrowers owned properties in Hawai'i encumbered by mortgages.  Each Plaintiff Borrower defaulted on his or her mortgage.  Each Bald Plaintiff's mortgage debt exceeded the amount obtained through the foreclosure sale.

---

[4] The First Amended Complaint, filed on November 27, 2017, is the operative complaint in *Bald*.  The Bald Plaintiffs filed their original Complaint in state court on July 23, 2012, and an amended Complaint on September 7, 2012.  *Bald*, ECF Nos. 1-1, 1-3.

[5] Plaintiff Borrowers in each case are represented by the same counsel.  The only exception is Emily Lelis.  Currently proceeding *pro se*, she has yet to file anything or appear in court.  *See Bald*, ECF Nos. 145, 155.  Deutsche Bank and U.S. Bank are represented by the same counsel; Wells Fargo is represented by separate counsel.  With the overlap in counsel, much of the briefing across the three cases also overlaps.

*Bald*, ECF No. 170-1, PageID # 3297.  Although this court has less detailed information for the Lima and Gibo Plaintiffs, they also appear to have had mortgage balances exceeding the foreclosure sales prices.  *Lima*, ECF No. 238-1, PageID #s 10594-96; *Gibo*, ECF No. 260-1, PageID #s 11089-90.  Further, Wells Fargo described some Bald Plaintiffs as having deliberately chosen to default, as they were investors who owned multiple properties and decided to spend their funds on more profitable properties.  *Bald*, ECF No. 170-1, PageID # 3297.

Following the defaults, Defendant Banks, as mortgagees, initiated nonjudicial foreclosure proceedings, and the properties were sold in foreclosure between 2008 and 2011. Third parties purchased some of the properties.  Defendant Banks purchased other properties themselves at the foreclosure sales and later sold them to third-party purchasers.

Plaintiff Borrowers sued Defendant Banks, asserting violations of the mortgages' power of sale clause, violations of section 667-5 of Hawai'i Revised Statutes, and unfair and deceptive acts or practices ("UDAP") in violation of section 480-2 of Hawai'i Revised Statutes.  *Lima*, ECF No. 1-2; *Gibo*, ECF No. 1-2; *Bald*, ECF No. 1-3.

This court granted motions to dismiss filed by Defendant Banks and Rosen in each case, dismissing all claims.[6] *Lima*, ECF No. 77; *Gibo*, ECF No. 94; *Bald*, ECF No. 45. The court concluded that Hawai'i's nonjudicial foreclose law did not bar advertisements of sales by quitclaim deeds and did not require publication of auction postponements. Plaintiff Borrowers appealed the court's orders to the Ninth Circuit. The *Lima* and *Gibo* appeals were consolidated, and the same Ninth Circuit panel presided over both the *Lima/Gibo* appeal and the *Bald* appeal.

The Ninth Circuit withheld any ruling pending the Hawai'i Supreme Court's decision in *Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 391 P.3d 1 (2017). Ultimately, in unpublished decisions, the Ninth Circuit, relying on *Hungate*, reversed the dismissal of claims against Defendant Banks and remanded the cases to this court. *Bald v. Wells Fargo Bank, N.A.*, 688 F. App'x 472 (9th Cir. 2017); *Lima v. Deutsche Bank Nat'l Tr. Co.*, 690 F. App'x 911 (9th Cir. 2017). The Ninth Circuit held that Plaintiff Borrowers had standing as "consumers" under section 480-2 of Hawai'i Revised Statutes, had adequately alleged that Defendant Banks' advertising and postponement practices were unfair within the meaning of section 480-2, and had alleged sufficient facts showing injury under

---

[6] The Bald Plaintiffs had previously dismissed Rosen from their lawsuit, so the court denied Rosen's motion to dismiss as moot.

section 480-2. *See Bald*, 688 F. App'x at 474-77; *Lima*, 690 F. App'x at 913. In the *Lima/Gibo* appeal, the Ninth Circuit also held that the Lima and Gibo Plaintiffs had sufficiently alleged Deutsche Bank's and U.S. Bank's liability for the alleged conduct. *Lima*, 690 F. App'x at 913-14. The Ninth Circuit affirmed the dismissal of the claims against Rosen. *Id.* at 915.

On remand, this court gave Plaintiff Borrowers leave to file amended complaints. The amended complaints removed Rosen as a defendant, added new plaintiffs, and added other practices that Defendant Banks had allegedly wrongfully engaged in during the nonjudicial foreclosure proceedings. Plaintiff Borrowers complained of the following practices:

> a. Recording and publishing Notices of Sale that did not include a "description of the mortgaged property" (a) as required by HRS Section 667-7(a)(1) (2008) and (b) which was "sufficient to inform the public of the nature of the property to be offered for sale" and "calculated to interest purchasers," as required by *Ulrich v. Sec. Inv. Co.*, 35 Haw. 158, 172-73 (1939);
>
> b. Publishing and/or posting the Notice of Sale for less time than required by statute;
>
> c. Selling the property despite having failed to send the borrower a notice of acceleration that gave the notice that the standard form mortgage required about the unconditional right the borrower had to bring a separate suit to stop the sale.
>
> d. Issuing notices of sale that lacked a description of the property that would interest prospective buyers and/or comply with statute;

> e.    Advertising the auctions of properties
> by "quitclaim deed" and/or without any
> covenants or warranties of title whatsoever;
>
> f.    Postponing auctions so frequently that
> the substantial majority of sale dates
> advertised in the Class's published notices
> of sale were not the actual auction dates;
>
> g.    Postponing auctions without publishing
> notices of the rescheduled auctions' new
> dates and times;
>
> h.    Changing the location of the auction
> without publishing the new location; and
>
> i.    Including as a term of sale that time
> was of the essence and that successful
> bidders were expected to close their sales
> within thirty days of their auctions, when
> in fact such sales either never, or almost
> never, closed within the specific timeframe.

*Lima*, ECF No. 182, PageID #s 6540-41; *Gibo*, ECF No. 196, PageID

#s 6520-21; *see also Bald*, ECF No. 99, PageID #s 2577-78

(complaining of roughly half of the listed practices).

In their amended complaints, Plaintiff Borrowers now

assert: (1) a tort claim for wrongful foreclosure, and (2) a

UDAP claim under section 480-2.[7] *Lima*, ECF No. 182, PageID

#s 6550, 6564; *Gibo*, ECF No. 196, PageID #s 6530, 6541; *Bald*,

ECF No. 99, PageID # 2604.

---

[7] The claim is phrased as one for both UDAP and unfair methods of
competition ("UMOC"). *See, e.g.*, *Lima*, ECF No. 182, PageID
# 6564.  While section 480-2 applies to both UDAP and UMOC
claims, Plaintiff Borrowers have not made separate arguments
relating to UDAP and UMOC.  *See* HRS § 480-2(a) ("Unfair methods
of competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce are unlawful.").

Plaintiff Borrowers seek damages "at law and in equity, including but not limited to rescissory or equitable damages intended to be equivalent to restoration of title and possession unlawfully taken from Plaintiffs and the other members of the Class, market value, lost rental value and sums expended by Plaintiffs and other members of the Class in the acquisition and/or improvement of their wrongfully sold properties, moving or rental of alternate properties." *Lima*, ECF No. 182, PageID # 6570; *Gibo*, ECF No. 196, PageID # 6547; *see also Bald*, ECF No. 99, PageID # 2608.[8]  They also seek several other forms of relief, including treble damages.

Defendant Banks in each case filed motions for summary judgment, arguing, among other things, that Plaintiff Borrowers' claims fail because they cannot prove the harm element of either their wrongful foreclosure claim or their section 480-2 claim. *Lima*, ECF No. 238; *Gibo*, ECF No. 260; *Bald*, ECF No. 170. Defendant Banks argue that, assuming that Defendant Banks

---

[8] The *Bald* complaint uses slightly different wording:

> [D]amages at law and in equity, including but not limited to rescissory or equitable damages intended to be equivalent to a restoration of title and possession unlawfully taken from Plaintiffs and the other members of the Class, *and sums expended by Plaintiffs and the other members of the Class in the acquisition and/or improvement of their wrongfully sold properties*[.]

*Bald*, ECF No. 99, PageID # 2608 (emphasis added).

engaged in the alleged practices and that those practices violated the powers of sale and the statutes governing nonjudicial foreclosure proceedings, Plaintiff Borrowers offer no evidence that they suffered any harm as a result of the practices.  *Lima*, ECF No. 238-1, PageID #s 10587-10600, 10601-02, 10610-11; *Gibo*, ECF No. 260-1, PageID #s 11081-94, 11095-96, 11104-05; *Bald*, ECF No. 170-1, PageID #s 3295-3300.  Defendant Banks argue that Plaintiff Borrowers provide no evidence that Plaintiff Borrowers would have been able to keep their properties had the allegedly wrongful actions not occurred, that the sales prices of the properties would have been higher had the actions not occurred, and/or that the properties' sales prices or fair market values exceeded the amounts owed on Plaintiff Borrowers' mortgages.

Plaintiff Borrowers respond that evidence that each Plaintiff Borrower lost title, possession, and the value of investments in that Plaintiff Borrower's property is sufficient to survive summary judgment.  *Lima*, ECF No. 247, PageID #s 13966-80; *Gibo*, ECF No. 268, PageID #s 13125-39; *Bald*, ECF No. 185, PageID #s 4704-13.  Plaintiff Borrowers argue that they were harmed by the loss of title and possession of the properties that they had before Defendant Banks foreclosed. According to Plaintiff Borrowers, their mortgage debts are relevant only after Defendant Banks' liability has been proven

12

at trial--i.e., as a matter of setoff that Defendant Banks have the burden of proving in the damages stage.

After hearing argument on the summary judgment motions, this court issued a minute order on April 30, 2019, asking the parties to submit briefs on whether to certify a question to the Hawai'i Supreme Court.  The order explained:

> During summary judgment proceedings in this case, the court has expressed concern about whether Plaintiffs have adequately shown that they sustained harm as a result of Defendants' allegedly wrongful actions. Plaintiffs have pointed to the loss of title to and possession of their real property and to the alleged loss of their investments in the property.  This court is uncertain whether, as part of their liability case, Plaintiffs must take into account that any such loss is subject to the mortgage that was foreclosed on.  Plaintiffs view the effect of the mortgage as an offset that Defendants have the burden of proving in the damages part of the case, not something that must be considered in determining whether, as a matter of the elements of the liability portion of the case, Plaintiffs have sustained harm at all.  While the liability issue goes to the identity and nature of the harm, and the damages issue goes to the extent or amount of the harm, it is not presently clear to this court that the effect of the mortgage falls entirely and exclusively within the damages issue.  This makes a difference for summary judgment purposes because Defendants are asking this court to rule that Plaintiffs fail to show the existence of harm in the context of the liability portion of the case.  When Plaintiffs say their harm includes the loss of title and possession and leave out of that description any reference to the encumbrances on that title and possession, they appear to be saying that they satisfy

the elements of their case in chief by
showing that they have been deprived of more
than they would have had even with a
properly conducted foreclosure.  Is that a
legitimate definition of their harm for
liability purposes under Hawaii law, or is
the law so unclear that a question should be
certified?

*Lima*, ECF No. 267; *Gibo*, ECF No. 288; *Bald*, ECF No. 198.  The

parties submitted their briefs on May 6, 2019.  *Lima*, ECF Nos.

273, 274; *Gibo*, ECF Nos. 292, 293; *Bald*, ECF Nos. 200, 201.

The court has concluded that the most appropriate

course of action is to seek guidance from the Hawai'i Supreme

Court.  In doing so, this judge recognizes her duty to decide

the matters before her.  This judge does not lightly impose on

another court while doing that.  However, in the interest of

deciding correctly and promptly, this judge, for the first time

in over 20 years on the bench, certifies a question.

IV.     **QUESTION OF LAW TO WHICH AN ANSWER IS SOUGHT AND
        EFFECT OF AN ANSWER ON THE PROCEEDINGS.**

The question to which an answer is sought asks:

When (a) a borrower has indisputably
defaulted on a mortgage for real property,
(b) a lender has conducted a nonjudicial
foreclosure sale but has not strictly
complied with the requirements governing
such sales, and (c) the borrower sues the
lender over that noncompliance after the
foreclosure sale and, if the property was
purchased at foreclosure by the lender,
after any subsequent sale to a third-party
purchaser, may the borrower establish the
requisite harm for liability purposes under
the law of wrongful foreclosure and/or
section 480-2 of Hawai'i Revised Statutes by

14

> demonstrating the loss of title, possession,
> and/or investments in the property without
> regard to the effect of the mortgage on
> those items?

The intended focus of the certified question is on the nature of the harm required to prove liability, not on the calculation of the amount or extent of damages.  The court is unsure whether the effect of the mortgage may be effectively ignored in determining whether a borrower has established liability.

The question may be restated as asking about the allocation of burdens between the parties:

> Is the effect of the mortgage considered
> only as a matter of setoff that a lender has
> the burden of proving after the borrower
> establishes the amount of the borrower's
> damages, or does a borrower with no
> preforeclosure rights in property except as
> encumbered by a mortgage bear the burden of
> accounting for the effect of the mortgage in
> establishing the element of harm in the
> liability case?

If the Hawai'i Supreme Court concludes that the effect of a mortgage must be considered in determining whether a borrower establishes the harm element of a prima facie liability case for wrongful foreclosure or a section 480-2 claim, this court anticipates granting summary judgment for Defendant Banks because Plaintiff Borrowers' only evidence of harm relates to the loss of title, possession, and investments in the properties without regard to any mortgage.  A grant of summary judgment on these grounds would dispose of all claims.

15

If the Hawai'i Supreme Court arrives at a different conclusion, that ruling will not dispose of the cases.  Instead, this court will need to address the remaining arguments in Defendant Banks' motions for summary judgment, as well as the issues in motions to dismiss filed by Deutsche Bank and U.S. Bank.  *Lima*, ECF No. 232; *Gibo*, ECF No. 257.  Wells Fargo has also filed a separate motion for partial summary judgment. *Bald*, ECF No. 171.  These motions are substantial and together raise dozens of complicated and often related issues.  The effect of the mortgage on establishing harm is the only matter common to all Plaintiff Borrowers' claims.  That is, even if this court addressed all of the other issues, it is unlikely that the claims of all named Plaintiff Borrowers would be disposed of by motions.

Notably, Plaintiff Borrowers in all three cases have filed for class certification.  *Lima*, ECF No. 237; *Gibo*, ECF No. 259; *Bald*, ECF No. 124.  In the aggregate, the motions involve over 1,500 borrowers whose properties were foreclosed.  In support of their class certification motions, Plaintiff Borrowers submitted an expert report on damages, specifically with respect to calculations of lost rental value.  Defendant Banks have filed motions to strike the report on *Daubert* grounds.  *Lima*, ECF No. 234; *Gibo*, ECF No. 237; *Bald*, ECF No. 181.  The harm issue raised in Defendant Banks' summary judgment

motions is directly relevant to the class certification motions and may also affect the *Daubert* motions.[9]

If this court denies summary judgment on liability and grants class certification, the trials in these cases will be lengthy.  Multiple trials may be required if certain issues need to be tried separately.  For example, there could be separate trials to determine the amount of damages for each Plaintiff Borrower if damages are tied to the value of each Plaintiff Borrower's property and/or to the date of foreclosure of that property.

These cases are very old and have gone up on appeal to the Ninth Circuit once already.  Defendant Banks argue that certifying a question will cause further delay.  This court understands that a federal court typically tries to predict how a state supreme court would rule on an issue.  However, if this court predicts incorrectly, the length of the resulting delay and the extent and complexity of the required proceedings would far eclipse any delay flowing from certification of a question.

Although an affirmative answer to the question being certified here is expected to dispose of the three cases before this court, such an answer would not necessarily leave borrowers in other cases with no remedy against lenders who have not

---

[9] An answer to the certified question would likely affect several other actions pending in this district court, some before several other judges.

strictly complied with nonjudicial foreclosure requirements. The question as framed here goes to the legal issue of who has the burden of proof, and the effect of the answer in the three cases in issue turns on whether, if Plaintiff Borrowers have the burden, they have met or failed to meet their burden. Even if Plaintiff Borrowers are unsuccessful in the three cases in issue here, that in no way precludes borrowers in other cases with different records from meeting any burden the law may place on them. In short, clarifying the law will not inexorably rob all borrowers of any remedy.

## V.        LEGAL CIRCUMSTANCES OUT OF WHICH THE CERTIFIED QUESTION ARISES.

Recently, the Hawai'i Supreme Court has issued several opinions relating to wrongful foreclosure and UDAP claims, some with factual allegations similar to those raised in *Lima*, *Gibo*, and *Bald*. The Ninth Circuit and federal district judges in this jurisdiction have also applied Hawai'i substantive law to analyze such claims. However, the case law addressing nonjudicial foreclosures does not provide a clear answer to the certified question.

This court views as unsettled how the harm issue should be addressed in the context of both the wrongful foreclosure tort claims and the UDAP claims before it. Stated in its starkest terms, resolving the parties' dispute (and answering the certified question) could leave Plaintiff

Borrowers with no recovery or with a windfall.  In other words, in trying to discern where the burdens lie, this court is not engaging in a purely philosophical exercise.  One might think that everything will sort itself out if this court simply allows the cases to proceed, and that whether the mortgage debt is considered as a liability issue or as a setoff issue will not matter to the final judgments.  That would ignore the status of the three cases, particularly the class action issues.  Far from trying to determine how many angels can dance on the head of a pin, this court is trying to parse the governing law in a manner that will allow these cases to proceed in an orderly fashion.

### A.  Wrongful Foreclosure Tort Claims.

"Hawaii law requires strict compliance with statutory foreclosure procedures" enumerated in section 667-5 of Hawai'i Revised Statutes, the now-repealed nonjudicial foreclosure statute.  *In re Kekauoha-Alisa*, 674 F.3d 1083, 1090 (9th Cir. 2012) (citing *Lee v. HSBC Bank USA*, 121 Haw. 287, 218 P.3d 775 (2009)).  In the past few years, the Hawai'i Supreme Court has formally recognized the tort of wrongful foreclosure arising out of violations of section 667-5.  *See Bank of America, N.A. v. Reyes-Toledo*, 143 Haw. 249, 263, 428 P.3d 761, 775 (2018) (citing *Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 407, 391 P.3d 1, 14 (2017); *Santiago v. Tanaka*, 137 Haw. 137, 157-58, 366 P.3d 612, 632-33 (2016); and *Mount v. Apao*, 139 Haw.

167, 180, 384 P.3d 1268, 1281 (2016), as examples of the Court's "past consideration of potential circumstances in which a wrongful foreclosure claim may exist in non-judicial foreclosures").

The Hawai'i Supreme Court has not yet identified the elements of a wrongful foreclosure claim specifically in the nonjudicial foreclosure context, but it has stated that "[g]enerally, if a foreclosure is conducted negligently or in bad faith to the detriment of the mortgagor, the mortgagor may assert a claim of wrongful foreclosure by establishing the following elements: (1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages." *Reyes-Toledo*, 143 Haw. at 264 n.12, 428 P.3d at 776 n.12 (citing James Buchwalter et al., 59 C.J.S. *Mortgages* § 650 (2009)). Thus, "to assert a wrongful foreclosure claim, . . . the mortgagor must have suffered an 'injury in fact' and damages as a result." *Id.* at 264, 28 P.3d at 776.

It is unclear whether the effect of the mortgage must be considered when determining whether a borrower has provided evidence of injury and damages in its prima facie case of wrongful foreclosure. As stated above, the only evidence of harm provided by Plaintiff Borrowers is evidence of the loss of

title, possession, and investments in the properties, as if all of these attach to property owned free and clear.

Generally, tort claims require "the plaintiff to show 'that the harm would not have occurred' in the absence of--that is, but for--the defendant's conduct." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-47 (2013) (citing Restatement of Torts § 431, Comment a (negligence); § 432(1), and Comment a (same)) (other citations omitted). It is undisputed that Plaintiff Borrowers defaulted on their mortgages and were subject to foreclosure. If Plaintiff Borrowers' harm is the loss of title, possession, and investments in their properties, that loss might well have occurred even if Defendant Banks had not engaged in the alleged advertising, publication, and postponement practices. That is, even if Defendant Banks had conducted the nonjudicial foreclosure proceedings according to all applicable requirements,[10] Plaintiff Borrowers' properties might still have been sold at foreclosure.

Plaintiff Borrowers argue that *O'Grady v. State*, 140 Haw. 36, 398 P.3d 625 (2017), precludes this type of "but for" analysis. *See, e.g.*, *Lima*, ECF No. 274, PageID # 17173. In *O'Grady*, falling rocks and a related car accident on a state

---

[10] This court is not here saying that it has made any factual finding that Defendant Banks have engaged in unlawful practices or wrongfully foreclosed. Such a determination will, in any event, be rendered unnecessary if Plaintiff Borrowers are determined to have failed to show cognizable harm.

highway led to a negligence claim.   *See* 140 Haw. at 40, 398 P.3d
at 629.   The Hawai'i Supreme Court applied "a two-step analysis
for determining whether the defendant's conduct was the legal
cause of the plaintiff's injuries."   *Id.* at 44, 398 P.3d at 633.
"[T]he defendant's conduct is the legal cause of the harm to the
plaintiff if '(a) the actor's conduct is a substantial factor in
bringing about the harm, and (b) there is no rule of law
relieving the actor from liability because of the manner in
which his or her negligence has resulted in the harm.'"   *Id.*
(alterations omitted) (quoting *Taylor-Rice v. State*, 91 Haw. 60,
74, 979 P.2d 1086, 1100 (1999)).   *O'Grady* did not address
foreclosures, but assuming the "substantial factor" test applies
in the present context, it is unclear whether Plaintiff
Borrowers can show that Defendant Banks' alleged conduct was a
substantial factor in bringing about the loss of title,
possession, and investments in Plaintiff Borrowers' properties
if Plaintiff Borrowers fail to account for the mortgages they
indisputably defaulted on.

Possibly, the harm to Plaintiff Borrowers should be
viewed as the loss of title, possession, and investments in
their properties *earlier than the loss would have occurred* with
properly conducted foreclosures.   This interpretation recognizes
that the foreclosure sales of the properties were inevitable
given Plaintiff Borrowers' defaults, but that the sales should

22

have been redone to comply with all requirements governing the manner of foreclosure.  In other words, even if Plaintiff Borrowers' properties would have eventually been sold (absent evidence that they could have cured their defaults had the sales been postponed), they suffered harm from Defendant Banks' premature selling of the properties.

However, even this characterization of harm raises the question of how to deal with Plaintiff Borrowers' mortgages.  If Plaintiff Borrowers can claim only the loss of something they had in the first place, then how can they ignore the mortgages, as they never had unencumbered interests in their properties?

Absent the foreclosure sales, Plaintiff Borrowers would have continued to be obligated to make their mortgage payments.  And absent any noncompliance with foreclosure requirements, Plaintiff Borrowers' mortgages would have been taken into account.  Under this line of reasoning, Plaintiff Borrowers themselves arguably must include evidence of their outstanding mortgage debt in claiming harm in the form of loss of title, possession, and investments.  That is, they cannot claim as harm the loss of something they never had.

But this court cannot say that this line of reasoning reflects Hawai'i law on the appropriate remedy in all wrongful foreclosure cases.  Critical to this court's uncertainty is *Santiago v. Tanaka*, which involved a wrongful foreclosure of

property owned by the Santiagos.  The Santiagos had a purchase money mortgage from their seller, who proceeded to foreclose even though the Santiagos were not in default when their property was sold.  *See* 137 Haw. at 140, 157-58, 366 P.3d at 615, 632-33.  The Hawaiʻi Supreme Court noted that "the classic remedy" in such circumstances would be "return of title and possession," but that "money damages . . . may be substituted for title and possession in certain instances pursuant to the equitable powers of a court in adjudicating a case arising from a mortgage foreclosure." *Id.* at 154 n.33, 366 P.3d at 629 n.33. To "prevent forfeiture of [the Santiagos'] interests," the Hawaiʻi Supreme Court "exercise[d] [its] equitable power in awarding restitution." *Id.* at 158, 366 P.3d at 633.  It concluded that "the Santiagos are entitled to restitution of their proven out-of-pocket losses." *Id.*  Having purchased the property in 2006 for $1,317,518.31, the Santiagos were entitled to $1,412,790.79, which included the Santiagos' $800,000 down payment on the property, $585,161.60 covering "mortgage payments from September 2006 to March 2011," $17,518.31 in closing charges associated with the sale, and $10,110.88 in property taxes that the Santiagos paid following the foreclosure sale. *See id.* at 142, 158, 366 P.3d at 617, 633.  It is not clear from the opinion why mortgage payments that ended up totaling $585,161.60 were made up to March 2011.  The foreclosure sale

occurred in October 2008.  *See id.* at 145, 366 P.3d at 620.

Moreover, mortgage payments from 2006, when the Santiagos bought

the property, through June 2008 totaled $235,161.60.  *Id.* at 144

n.17, 366 P.3d at 619 n.17.  That means that more than half of

the $585,161.60 in mortgage payments were made after the

foreclosure sale.

Later, in *Mount v. Apao*, the Hawai'i Supreme Court

directed the circuit court on remand "to apply *Santiago* to

determine an appropriate remedy for the wrongful foreclosure."

139 Haw. at 180, 384 P.2d at 1281.  *Hungate* also cited *Santiago*,

stating that, "[w]hen voiding the foreclosure is not possible,

the mortgagor is entitled to 'restitution of their proven out-

of-pocket losses' through a wrongful foreclosure claim."  139

Haw. at 407, 391 P.3d at 14.

Plaintiff Borrowers rely on *Santiago* for the

proposition that the harm in a wrongful foreclosure is the loss

of title and possession in the property, and that, if return of

title and possession is not feasible, then a court may award

restitution to the borrower pursuant to the court's equitable

powers.  Plaintiff Borrowers conclude that a borrower's

outstanding mortgage debt is not relevant to determining whether

a borrower is harmed by a violation of foreclosure requirements;

Plaintiff Borrowers view mortgages as relevant only as a matter

of setoff.  *See, e.g.*, *Lima*, ECF No. 247, PageID #s 13970-80.

The *Santiago* decision makes no mention of the effect of any remaining mortgage obligation owed by the Santiagos.  The wrongful foreclosure was premised on mortgage provisions allowing the lender to declare all outstanding amounts immediately due and payable upon the Santiagos' default.  137 Haw. at 144, 366 P.3d at 619.  But there is no discussion in the *Santiago* opinion going to the satisfaction of any mortgage obligation, even after the holder of the purchase money mortgage bought the property for $365,000 at the foreclosure auction in 2008.  *See id.* at 145, 366 P.3d at 620.

That foreclosure price was far below the more than $1.3 million that the Santiagos had paid just two years earlier. The Hawai'i Supreme Court appears to have been intent on avoiding a huge windfall to the lender.  The Court did not expressly refer to any windfall to the victimized borrowers, but the "total out-of-pocket losses of $1,412,790.79" resulting from the wrongful foreclosure appears to have disregarded any remaining mortgage obligation, and to have ended up compensating the Santiagos for payments made even during the years they occupied the property.  Thus, the Santiagos were repaid whatever they had spent, were left with no debts, and were in effect given rent-free occupancy before losing title.  Plaintiff Borrowers therefore read *Santiago* as establishing that, under Hawai'i law, borrowers who have been subjected to wrongful

26

foreclosures may end up debt-free, and reimbursed for all payments made relating to the property or to the foreclosure.

As added support for their reading, Plaintiff Borrowers point to *Beneficial Hawaii, Inc. v. Kida*, 96 Haw. 289, 30 P.3d 895 (2001), in which a mortgage was declared void because it had issued through the services of an unlicensed mortgage broker.  That left the purchaser owning property free and clear of a mortgage.  But this purported windfall resulted from the mortgagee's failure "to adduce evidence sufficient to prove that it was entitled to any equitable relief."  *Id.* at 296, 30 P.3d at 902.  This court therefore questions whether Plaintiff Borrowers should rely on *Kida* as establishing what Plaintiff Borrowers may recover.  It was the failure of proof, not some unassailable borrower's right, that resulted in the purported windfall to the borrower.

Notably, *Santiago* and *Mount* involved borrowers who had cured their defaults or were denied the opportunity to cure. The decisions do not expressly limit the remedies discussed to those for whom no foreclosure at all should have occurred, but this court recognizes that not all wrongful foreclosures are the same.  Like the three cases before this court, *Hungate* involved wrongdoing in the manner in which the nonjudicial foreclosure was conducted, not foreclosure that never should have occurred even had the lender strictly complied with procedural

27

requirements. The borrower in *Hungate* had defaulted, and the opinion gives no indication that the borrower could have cured the default. The borrower's remedy for wrongful foreclosure remained "out-of-pocket losses." *See Hungate*, 139 Haw. at 399, 391 P.3d at 6. Plaintiff Borrowers read "out-of-pocket losses" as allowing them to recover title, possession, and investments in their properties in the same manner that the nondefaulting Santiagos did. *See, e.g.*, *Lima*, ECF No. 247, PageID #s 13969-72.

Although relying on *Santiago*, Plaintiff Borrowers do not appear to be seeking a full extinguishing of mortgage debt. They instead seek to avoid having to take that debt into account at the summary judgment stage or the class certification stage. Defendant Banks argue that if a borrower has an "underwater" mortgage (i.e., a mortgage with an outstanding balance that exceeds the value of the property) or if a borrower deliberately chooses to default, the borrower cannot ignore the mortgage debt when challenged at the summary judgment stage.

The conundrum before this court is how, if at all, the "out-of-pocket losses" restitution analysis bears on whether a borrower can prove the harm element in the liability portion of a wrongful foreclosure claim. *Santiago* may suggest that any remaining mortgage debt be disregarded, and the investment value in the property be returned to borrowers without setoff. *See*

28

137 Haw. at 158, 366 P.3d at 633. The Hawai'i Supreme Court recognized that, "[a]t the time of their ejectment, the Santiagos had made virtually full payment to Tanaka for the Tavern, including an $800,000 down payment and $585,161.60 in mortgage payments." *Id.* It is not clear whether the result would have been the same if the mortgage debt had substantially exceeded the value of the property.

If the effect of the mortgage does matter in the harm analysis, such that a borrower whose debt exceeds the value of the property does not suffer harm, that of course leaves the question of how to determine the value of the property. Defendant Banks offer the foreclosure prices as evidence of value, but this court is not here adopting that approach or including that issue in the certified question. This court notes that *Santiago* appeared to disregard the foreclosure price of $365,000. *See* 137 Haw. at 145, 366 P.3d at 620.

### B. UDAP Claims.

To state a UDAP claim, a plaintiff must demonstrate: "(1) a violation of section 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages." *Isagawa v. Homestreet Bank*, 769 F. Supp. 2d 1225, 1237 (D. Haw. 2011) (citing *Davis v. Wholesale Motors, Inc.*, 86 Haw. 405, 417, 949 P.2d 1026, 1038 (App. 1997)). "[W]hile proof of a violation of chapter 480 is an essential element of an

action under HRS § 480-13, the mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause [some] private damage." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Haw. 224, 254 n.30, 982 P.2d 853, 883 n.30 (1999) (second alteration in original) (quoting *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 618, 620-21, 607 P.2d 1304, 1312, 1313 (1980)), *superseded by statute on other grounds as noted in Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 428 n.9, 228 P.3d 303, 308 n.9 (2010).

"HRS chapter 480 does not define injury or damages, but 'Hawai'i courts have not set a high bar for proving' injury." *Hungate*, 139 Haw. at 412, 391 P.3d at 19 (quoting *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046, 1053 (9th Cir. 2014)). However, "[a]ny injury must be fairly traceable to the defendant's actions." *Kekauoha-Alisa*, 674 F.3d at 1092 (citing *Flores v. Rawlings Co., LLC*, 117 Haw. 153, 167 n.23, 177 P.3d 341, 355 n.23 (2008)).

In *Kekauoha-Alisa*, the Ninth Circuit addressed injury in a UDAP claim in an adversary proceeding in bankruptcy court. The claim was founded on alleged violations of section 667-5's publication requirements. The Ninth Circuit stated, "Under HRS § 480-13, the injury is measured through standard expectation damages, i.e., damages sufficient to make the plaintiff whole."

30

*Kekauoha-Alisa*, 674 F.3d at 1092 (citing *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 290-91, 788 P.2d 833, 836-37 (1990)).  Because the bankruptcy court "made no finding-- explicit or otherwise--that the enumerated damages were caused by and fairly traceable to Lenders' improper postponement," the Ninth Circuit remanded the case to the bankruptcy court to make such findings.  *Id.* at 1093.

The Ninth Circuit said it was not enough for a debtor to "simply list[] as damages Debtor's loss of equity in her property, the rental value of the property for the time Debtor was apparently excluded from possession, and attorneys' fees accrued in the state court ejectment action."  *Id.*  It reasoned:

> The damages the bankruptcy court awarded all flow from the foreclosure on Debtor's home and appear to give Debtor an inappropriate windfall.  This seems irreconcilable with the bankruptcy court's finding that Debtor did not experience foreclosure of her home because of Lenders' imperfect postponement procedure.  As the bankruptcy court phrased it, "There is no question, . . . that the Mortgage was in default and that the mortgagee was entitled to foreclose.  The only question is whether the proper party foreclosed the Mortgage in the proper manner."  In sum, the court's findings of fact appear to establish that Debtor's losses "result[ed] from" her default, rather than Lenders' failure to shout out the postponement of the foreclosure.

*Id.* (citing *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 114, 148 P.3d 1179, 1216 (2006)).[11]

On remand, to "properly narrow[] the inquiry to the damage caused by Lenders' deceptive postponement," the bankruptcy court was directed to "determine the difference, if any, between Debtor's situation had Lenders properly postponed the foreclosure sale and Debtor's actual situation, given that the sale was improperly postponed."[12]  *Id.*

---

[11] The Ninth Circuit also noted that the plaintiff-debtor had suggested that "she can prove that but for Lenders' improper postponement, she might have succeeded in curing her default" and that "[t]his fact, if proven, might establish that Debtor's temporary loss of possession of the property was 'fairly traceable' to Lenders' deceptive practice." *Kekauoha-Alisa*, 674 F.3d at 1093 (quoting *Flores*, 117 Haw. at 167 n.23, 177 P.3d at 355 n.23).

[12] On remand, the bankruptcy court stated,

> [H]aving reviewed the record again, I now think that the improper notice of postponement did not cause the Debtor to lose the value of the equity in her property.  The defective postponement did not extinguish the Debtor's debt to the Lenders, discharge the lien of the mortgage, or preclude the Lenders from foreclosing.  It means only that the Lender must renotice the foreclosure for a later date.  Any damages flowing from the fact of the foreclosure are not compensable, because the Lender unquestionably had (and still has) the right to foreclose.  The only compensable damages are those caused by the wrongful postponement of the foreclosure--in other words, damages caused by the fact that the Lenders took ownership and possession of the Debtor's property before the Lenders were entitled to do so.

*In re Kekauoha-Alisa*, Bankr. No. 467,468, 2012 WL 3061511, at *2 (Bankr. D. Haw. Jul. 26, 2012).  The bankruptcy court went on to award "the fair rental value of the property from the date that

The Ninth Circuit in *Kekauoha-Alisa* therefore considered the borrower's default when analyzing the harm element in a UDAP claim and appeared to require the borrower to offer evidence of harm beyond the loss of title, possession, and investment in the property.  The Ninth Circuit's "interpretation of Hawai'i law remains binding in the Ninth Circuit 'in the absence of any subsequent indication from the Hawai'i courts that our interpretation was incorrect.'"  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000)

---

she wrongfully lost ownership of the property pursuant to the invalid foreclosure sale until the Lenders restore title to her and the attorneys' fee she incurred in [a related] ejectment case."  *Id*. at *4.  The award was trebled under section 480-2. *See id.*

The lenders sought reconsideration of the award, arguing that "their misconduct--the invalid notice of postponement of the foreclosure sale--did not cause this damage, because the Debtor was still in default and they were still entitled to foreclose."  *In re Kekauoha-Alisa*, Bankr. No. 05-01215, 2013 WL 773057, at *1 (Bankr. D. Haw. Feb. 27, 2013). The bankruptcy court denied the lenders' motion, reasoning that "[t]he Lenders' misconduct did cause these losses," and that "[w]hether or not the Debtor was able to make the mortgage payments, the Debtor was entitled to the use and ownership of the property until the Lenders properly foreclosed their mortgage."  *Id*. at *2.

Thus, the bankruptcy court did not consider the effect of the mortgage in determining whether the lenders caused the debtor harm.  *See also Paresa v. HSBC Bank USA, N.A.*, Civ. No. 17-00248 DKW-RLP, 2018 WL 2090605, at *10 (D. Haw. May 4, 2018) (referring to a premature nonjudicial foreclosure sale and noting that "this particular type of harm may be caused by the failure of a foreclosing mortgagee to give proper notice of postponement," but declining to address, on a less explicit record of harm than exists in the three cases in issue here, "the applicable measure of damages").

(alteration omitted) (quoting *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)).

However, *Hungate*, decided five years after the Ninth Circuit decided *Kekauoha-Alisa*, may suggest that the Ninth Circuit's interpretation of UDAP claims was incorrect.  In discussing whether the borrower in *Hungate* had alleged sufficient facts to show the requisite harm supporting his UDAP claim, the Hawai'i Supreme Court stated that the borrower "need only allege that 'he has, as a direct and proximate result of [the lender's] violation of section 480-2, sustained special and general damages' to withstand a motion to dismiss.'"  139 Haw. at 412, 391 P.3d at 19 (alterations omitted) (quoting *Compton*, 761 F.3d at 1054).  The Hawai'i Supreme Court held that the borrower sufficiently stated a UDAP claim because "[b]ased on the allegations in the complaints, the factfinder could determine [the borrower] was injured by the foreclosure sale, which eliminated equity that [the borrower] held in the property and prevented him from using the property."  *Id.*

This court recognizes that *Hungate* addressed the factual allegations required to survive a motion to dismiss, not the evidence required to survive a motion for summary judgment. In *Kekauoha-Alisa*, the Ninth Circuit was reviewing a decision made after a bench trial.  It is unclear to this court whether the Hawai'i Supreme Court's language in *Hungate* should be read

34

as stating that, to demonstrate harm under section 480-2, a borrower need only provide evidence of lost use of the property and/or lost equity or investment in the property.  As a result, this court seeks guidance from the Hawai'i Supreme Court on how, if at all, the effect of a mortgage should be factored into determining whether a borrower bringing a UDAP claim has suffered injury for purposes of presenting its liability case in the summary judgment context.[13]

**VI.      ORDER.**

The Clerk of Court is directed to transmit a copy of this order to the Hawai'i Supreme Court under official seal of the United States District Court of the District of Hawaii.  *See* Haw. R. App. P. 13(c).  The Clerk is also directed to provide "original or copies of all or any portion of the record" in this case as "[t]he Hawai'i Supreme Court may, in its discretion, require."  *Id.*

---

[13] During a consolidated hearing on the class certification motions, Plaintiff Borrowers argued that, if this court determined that Plaintiff Borrowers had not established an injury, then this court lacked subject matter jurisdiction because Plaintiff Borrowers, absent any injury, lacked standing to proceed.  Plaintiff Borrowers are confusing jurisdictional requirements with their burden on summary judgment.  Certainly Plaintiff Borrowers must allege an injury for this court to exercise jurisdiction over their claims.  But if Plaintiff Borrowers fail to offer evidence of injury, that is a failure of proof, not of jurisdiction.  The question certified here goes to what Plaintiff Borrowers must prove to maintain their claims, not to whether Plaintiff Borrowers have at least alleged an injury.

The parties in each case shall file a joint notice in this court within one week of the Hawai'i Supreme Court's decision to accept or reject certification.  If the Hawai'i Supreme Court accepts the certified question, the parties in each case shall file a joint status report to this court every six months after the date of acceptance, or more frequently if circumstances warrant.

Further proceedings in this court are stayed pending action by the Hawai'i Supreme Court.  The pending motions in *Lima*, *Gibo*, and *Bald* are hereby terminated without prejudice.  After the Hawai'i Supreme Court's decision, the motions may be reinstated without filing additional papers.  A party wishing to reinstate a motion should submit a letter to the court specifying the motions to be reinstated.  All upcoming dates and deadlines in these cases are vacated.  Deadlines that have already expired are not affected by this order, meaning that, if new dates are later set, expired deadlines are not automatically extended.

The court directs the Clerk to administratively close all three cases while the matter is pending in the Hawai'i Supreme Court.

\

\

\

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 16, 2019.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Lionel Lima, et al. v. Deutsche Bank National Trust Company, Civ. No. 12-00509 SOM-WRP, Evelyn Jane Gibo, et al. v. U.S. Bank National Association, Civ. No. 12-00514 SOM-WRP, and David Emory Bald, et al. v. Wells Fargo Bank, N.A., Civ. No. 13-00135 SOM-RT; ORDER CERTIFYING A QUESTION TO THE HAWAI'I SUPREME COURT.